IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01090-NRN

SUZANNE S. MATSON,

    Plaintiff,

v.

GEICO CASUALTY COMPANY,

    Defendant.

---

ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Magistrate Judge N. Reid Neureiter

    This case is before the Court for all purposes pursuant to 28 U.S.C. § 636(c) and the Order of Reference, Dkt. #9, entered upon consent of the parties. The matter presently before the Court is Defendant's Motion for Partial Summary Judgment, Dkt. #18. The parties briefed the motion, Dkt. ##22 & 26, and the Court heard argument of the parties on October 31, 2019, Dkt. #27, at which time the Court found the motion premature[1] and ordered the parties to submit additional briefing after they had an

---

[1] The Court found at that time that Defendant's motion was premature, as summary judgment should only be entered "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting that summary judgment may be entered "as long as the plaintiff has had a full opportunity to conduct discovery"). The Scheduling Order was entered in this case on June 27, 2019. Defendant filed its motion on September 9, 2019. The deadline for disclosure of experts was November 7, 2019. The deadline for completion of discovery, February 3, 2020 has not yet passed. Because Ms. Matson was not seeking an extension of either deadline so that she could respond to Geico's summary judgment motion, the Court finds that the representation of counsel for Plaintiff at the hearing that expert testimony would aid in establishing the industry standard applicable here was sufficient to satisfy the requirements of Rule 56(d), Fed. R. Civ. P.

opportunity to do additional discovery, and, in particular, for Plaintiff to submit her expert report. The parties did so, Dkt. ##28 & 29, and the Court heard additional argument on January 22, 2020. Dkt. # 30.

Having reviewed all of the briefs, the applicable law, and the court file, the Court finds that genuine issues of material fact exist and **DENIES** Defendant's Motion for Partial Summary Judgment.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.

Ms. Matson was involved in a car accident on November 2, 2017. She was hurt in the accident and received medical treatment as a result of those injuries. Ms. Matson ultimately settled her claim with the tortfeasor's insurance for the policy limits of $25,000. At that time, Ms. Matson was covered under an insurance policy issued by Geico that provided uninsured/uninsured motorist benefits with a limit of $300,000. Ms. Matson made a claim for benefits under the Geico policy.

In October 2018, Ms. Matson submitted her claim to Geico seeking recovery for $19,684.98 in medical expenses, $34.21 in other expenses, and $25,000 in general damages, for a total of $44.684.98. After subtracting $25,000 for the amount Ms. Matson received from the tortfeasor, Geico offered to pay Ms. Matson $19,684.98 to settle her entire claim. Ms. Matson did not accept the offer, and on March 8, 2019, she submitted updated medical bills, which, according to her, totaled $41,499.55. On March 14, 2019, Geico conveyed a "settlement" offer to pay Ms. Matson $35,831.18. That offer was not accepted, and on April 12, 2019, Ms. Matson instituted this lawsuit. On May 9,

2

2019, Geico issued a *Fisher* payment[2] for "economic damages" of $16,048.46. After Ms. Matson provided Geico with initial disclosures as part of the discovery in this lawsuit, Geico issued a second *Fisher* payment, also for "economic damages," in the amount of $20,823.71 on July 10, 2019.

Geico contends that it is entitled to summary judgment on Ms. Matson's claims for common law bad faith and statutory unreasonable delay or denial because, according to Geico, its *Fisher* payments to Ms. Matson were within the 60-day industry standard for such payments and there is no evidence that it acted in bad faith. Ms. Matson argues that the industry standard is 30 days, not 60, and that Geico's delay in making the Fisher payments was unreasonable because the payments were not within 30 days of when she submitted her medical records to Geico.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided

---

[2] In 2018, the Colorado Supreme Court held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018). Since that time, payments from insurers to insureds for amounts not in dispute are referred to as "*Fisher* payments."

that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, (1986*); Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324. "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on

personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 253. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.* at 255.

### III. Bad Faith – Statutory and Common Law

"Due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer owes a common law duty of good faith and fair dealing, whose breach may give rise to a separate cause of action arising in tort. *Goodson v. American Standard Ins. Co*, 89 P.3d 409, 414 (Colo. 2004) (quotation marks omitted). "Broadly speaking, '[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer.'" *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012) (quoting *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

Colorado recognizes both statutory and common law claims for bad faith breach of insurance contracts. A statutory claim, based on C.R.S. § 10-5-1115, requires a showing that the insurer acted unreasonably in delaying or denying owed insurance benefits. *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013) (citing *Vaccaro v. Am. Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012)). Common law bad faith, on the other hand, requires "proof of the insurer's knowledge or reckless disregard as to the validity of an insured's claim." *Baker*, 939 F. Supp. 2d at 1107 (internal citations omitted). Evidence of bad faith demonstrating that the insurer acted unreasonably also supports a statutory bad faith claim. *See Id. See also Wahlert v. Am. Standard Ins. Co. of Wisconsin*, 173 F. Supp. 3d 1187, 1193 (D. Colo. 2016) (explaining that, because of a statutory bad faith claim's lesser liability burden and onerous penalty provision, such a claim is financially more threatening to an insurer). Both common law and statutory bad faith claims are evaluated objectively, based on industry standards. *Williams v. Owners Ins. Co.*, 621 Fed. Appx. 914, 919 (10th Cir. 2015). "The aid of expert witnesses is often required in order to establish objective evidence of industry standards." *Goodson*, 89 P.3d at 415. The fact that an insurer's reason for denying or delaying payment of a claim was "fairly debatable" weighs against finding that the insurer acted unreasonably. *Sanderson*, 251 P.3d at 1217; *Vaccaro*, 275 P.3d at 759.

In cases where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect." *Sanderson*, 251 P.3d at 1217. At the same time, an insurance company cannot simply escape liability for unjustified denials by

framing it as a valuation dispute. "[F]air debatability . . . is not outcome determinative; it is a necessary but not always a sufficient condition for finding reasonableness." *Baker*, 939 F. Supp. 2d at 1111 (citing *Sanderson*, 251 P.3d at 1219).

**Analysis**

Geico argues that Ms. Matson cannot meet her burden of providing evidence that it acted unreasonably with respect to her claim. Geico asserts that Ms. Matson cannot show that it unreasonably delayed its *Fisher* payment to her because she has not established, and cannot establish, an industry standard that requires payment in less than 60 days. Geico also argues that Ms. Matson has not come forward with evidence to support a conclusion that it either recklessly or knowingly disregarded the validity of the plaintiff's claim.

Geico argues that it is undisputed "that the question of whether there was a violation of Colo. Rev. Stat. § 10-3-1115(1)(a) turns <u>exclusively</u> on whether there was unreasonable delay or denial," Dkt. #26 at 6 (emphasis in original), and argues that Ms. Matson cannot show that its *Fisher* payment, which was 56 days after Ms. Matson submitted her updated medical records, was not within the industry standard for those types of payments. In support of its argument, Geico asserts that a Colorado Division of Insurance Regulation, which provides that insurers are required to pay benefits due under a policy within 60 days, is "potential evidence" of a 60-day time limit. *See* 3 Colo. Code Regs. 702-5:5-1-14 § 4(A)(1).

Ms. Matson, on the other hand, argues claims for bad faith encompass "an entire course of conduct," s*ee Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1268 (Colo. 1985), and that the industry standard for *Fisher* payments is 30 days, as established by

7

Colorado statutes: Colo. Rev. Stat. §§ 10-3-1104(h) and 10-4-642(6)(b)-(c). In support of her argument that the standard is 30 days, Ms. Matson submitted a declaration by her expert that the industry standard is set based on common law and these two statutes. Dkt. #28-1.

Geico did not present any expert evidence regarding the applicable industry standard, but argues that the statutes cited by Ms. Matson are not applicable here, and that the expert declaration submitted by Ms. Matson is not sufficient to support the application of the 30-day standard. Geico cites *Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-CV-01843-MSK-BNB, 2015 WL 1297844 (D. Colo. Mar. 19, 2015) in support of its argument. In *Turner*, Judge Krieger declined to decide which alleged industry standard applied. Instead, after concluding that an insurer "arguably must . . . conform to the requirements of both Regulation 5–1–14 and C.R.S. § 10–4–642(6)," Judge Krieger determined that the plaintiff in that case failed to present competent evidence of any industry standard. *Turner* at *5-6 (finding the plaintiff's expert's statements lacked "adequate foundation under FRE 702"). In contrast to Judge Krieger's decision in *Turner*, for purposes of this early summary judgment motion, the Court finds that the declaration of Ms. Matson's expert contains an adequate explanation of his background, experience and bases for his opinion that the industry standard is 30 days or less.[3]

Geico also questions the applicability of the Unfair Claims Settlement Practices Act ("UCSPA") cited by Ms. Matson. The statute cited by Ms. Matson specifically states that it applies to statutory bad faith cases, providing that conduct prohibited under the

---

[3] At this time, the Court is not making any determination under Federal Rule of Evidence 702 as to the admissibility of the expert testimony.

UCSPA may be considered by the trier of fact if the delay or denial was caused or contributed to by that conduct. *See* Colo. Rev. Stat. § 10-3-1113(4) ("In determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct."). The UCSPA identifies 14 types of prohibited conduct, and the Court finds at least one provision that may apply to Geico's conduct here. Specifically, prohibited conduct includes when an insurer forces an insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered. C.R.S. § 10–3–1104(1)(h)(VII). *See also Peiffer v. State Farm Mut. Auto. Ins. Co*, 940 P.2d 967, 971 (Colo. App. 1996) (noting that a jury may consider if conduct violated UCSPA).

There is sufficient evidence, based on the timing of Ms. Matson's demands, settlement offers made and payments issued by Geico, from which a reasonable jury could find Geico acted with reckless disregard for the value of Ms. Matson's claim, and that its delay was unreasonable. In particular, after Geico offered to settle Ms. Matson's entire claim for $19,684.98 in October 2018, Ms. Matson submitted additional evidence to Geico of medical expenses in the amount of $41,526.55 on March 8, 2019, and then on March 14 was offered a "settlement" in the amount of $35,831.18 without any explanation as to how the settlement amount was calculated. It was not until May 9, after Ms. Matson filed suit, that Geico recalculated what was owed, and issued a payment in the amount of $16,048.45 for what it called "economic damages," followed

9

up in July 2019 by another payment for economic damages of $20,823.71. Geico provides no explanation, other than that the file was "re-reviewed," for the failure to make the first *Fisher* payment until after Ms. Matson filed suit.

On these facts, the Court finds that a reasonable jury could infer, based on this sequence of events in which an offer of "settlement," presumably to resolve Ms. Matson's entire claim for economic and noneconomic damages, was followed up after the lawsuit was filed by an actual payment for economic damages, that Geico was not acting reasonably and showed reckless disregard as to the value of Ms. Matson's claim. *See Baker,* 939 F. Supp. 2d at 1105 (finding a "genuine dispute" existed as to insurer's motivations in rejecting a claim, despite the fact that the insurer had eventually paid the claims).

"Where the legislative enactment or administrative rule is not conclusive of the standard of care, the statute or rule may be used as evidence of the standard of care from which the trier of fact may evaluate the defendant's conduct." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343–44 (Colo. 2004) ("While the Unfair Claims Practices Act does not establish a standard of care actionable in tort, it may be used as valid, but not conclusive, evidence of industry standards."). Ms. Matson has, at a minimum, presented sufficient evidence to create a genuine issue of material fact as to what the industry standard is. As such, the Court cannot grant summary judgment. *See O'Sullivan v. Geico Cas. Co.,* 232 F. Supp. 3d 1170, 1183 (D. Colo. 2017) (citing *Allen*, 102 P.3d at 343-44 and finding that the "contested expert testimony is sufficient to establish a genuine dispute of fact regarding the reasonableness of Geico's conduct and therefore makes summary judgment on the bad faith claims inappropriate"). Here, Geico has not

meaningfully contested Ms. Matson's expert's testimony. As in *Turner*, the Court is not making a determination that the 30-day time period applies to this case. Instead, in viewing the evidence provided by both parties in the light most favorable to Ms. Matson, the Court finds that summary judgment is not appropriate.

The Court holds that it is more appropriate for a jury, rather than this court at summary judgment, to determine whether Geico's actions in adjusting Ms. Matson's claims were reasonable. *See O'Sullivan*, 232 F. Supp. 3d at 1182-84 (holding that evidence that the defendant acted contrary to established industry standards created a genuine issue of fact as to the plaintiff's statutory bad faith claims). *See also Meadows*, 2016 WL 7868824, at *10 (holding that the defendant was not entitled to summary judgment on either of the plaintiff's bad faith claims, "[b]ecause the reasonableness of the insurer's conduct is an element of both").

## CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is **DENIED**.

DATED: January 24, 2020

BY THE COURT

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge